IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:23-cr-00079-SE-AJ |
| v. | ) | |
| | ) | |
| KYLE HENDRICKSON | ) | |

SENTENCING MEMORANDUM AND
MOTION FOR A DOWNWARD VARIANCE

Mr. KYLE HENDRICKSON, respectfully files this his sentencing memorandum and moves this Honorable Court to grant a variance based upon the statutory factors set out at 18 U.S.C. § 3553(a). Mr. Hendrickson respectfully submits the following in support thereof.

**I.   Introduction**

On September 13, 2023, a federal grand jury returned a two-count Indictment against Mr. Hendrickson, charging him with one count of Interstate Threatening Communication in violation of 18 U.S.C. § 875(c) and one count of Possession of a Firearm in a School Zone in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4). (Indict., ECF No. 14.)

On December 11, 2023, Mr. Hendrickson pleaded guilty to Counts 1 and 2 of the Indictment. (Min., December 11, 2023.)

1

## II. Argument and Citations of Authority

Unless otherwise prohibited by law, a sentencing court may consider without limitation any information concerning the background, character, and conduct of a defendant. *See* §1B1.4 (Information to be Used in Imposing Sentence (Selecting a Point Within the Guideline Range or Departing from the Guidelines)). *See also* 18 U.S.C. § 3661 (Use of Information for Sentencing). A variance is a sentence imposed outside the applicable guideline range based upon the statutory sentencing factors found at 18 U.S.C. § 3553(a).

A sentencing court must consider all the factors set forth in 18 U.S.C. § 3553(a) as a whole, including whether a variance—a sentence outside the advisory guideline system—is warranted. *United States v. Rodríguez-Reyes,* 925 F.3d 558 (1st Cir. 2019). "[A] sentencing court may rely on a factor that is already included in the calculation of the GSR to impose an upward or downward variance as long as the court 'articulate[s] specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation.' " *United States v. Bruno-Campos*, 978 F.3d 801, 806 (1st Cir. 2020) (quoting *United States v. Zapete-Garcia*, 447 F.3d 57, 60 (1st Cir. 2006)). A sentencing judge may commit procedural error warranting remand by failing to explain its rejection of an argument for a downward variance. *See United States v. Cirilo-Muñoz,* 504 F.3d 106, 107 (1st Cir. 2007)(vacating a sentence where the district judge failed to respond to the defendant's argument for a downward variance).

2

### i. The six-level enhancement under §2A6.1(b)(1) is inapplicable.

The Probation erroneously applied a six-level enhancement under §2A6.1(b)(1), based on the allegation that the offense involved conduct evidencing an intent to carry out such threat by virtue of Mr. Hendrickson possessing a firearm on school property. PSR, ECF No. 27 at para. 32.

A thorough review of case law and relevant circumstances reveals that this enhancement is inapplicable here.

First, the facts contained in the PSR itself sufficiently refute the Probation's allegation that Mr. Hendrickson subjectively intended to carry out the threat by possessing a firearm in the video, as required by case law as a prerequisite to the application of the enhancement. In *United States v. Dixon*, 449 F.3d 194 (1st Cir. 2006), the First Circuit made it clear that "a sentencing court must find that a defendant *subjectively* intended to carry out a threat before imposing the additional six levels," because "the Commission formulated section 2A6.1(b)(1) to distinguish conduct *based solely on a defendant's subjective intent*." 449 F.3d at 203 (emphases added). In this regard, the court reasoned that

> section 2A6.1(b)(1) states that the six-level enhancement should be imposed "[i]f the offense involved any conduct evidencing an intent to carry out such threat." Given its ordinary meaning, this plain language denotes that the application of the enhancement turns on *a defendant's subjective intent* . . .
>
> . . .
>
> Recognizing that this group of statutes spans a wide range of conduct, the Sentencing Commission compiled a number

3

> of specific offense characteristics to grade the seriousness of a defendant's conduct. These specific offense characteristics are meant to distinguish conduct based "upon *the defendant's intent and the likelihood* that the defendant would carry out the threat." USSG § 2A6.1, comment. (backg'd.).
>
> Consequently, the most natural interpretation of the commentary is one that respects the plain language of the intent enhancement: the Commission formulated section 2A6.1(b)(1) to distinguish conduct *based solely on a defendant's subjective intent*.

*Id*. at 203 (emphases added).

Here, however, the facts included in the PSR clearly indicate that Mr. Hendrickson never subjectively intends to carry out the threat. While he did possess a firearm at the school property, the circumstances surrounding that moment, when read as a whole, suggest no intent to carry out a threat. Specifically, he stated that the video was nothing but a joke (although a terrible one), and that he would never carry out the threat since his relative attended that school. PSR, ECF No. 27 at para. 19. He also stated that he usually did not carry a handgun but that he had the one from the SnapChat video on him because he had just bought it. *Id*. Moreover, he drove to the school area with his friend and his mother simply to run an errand - picking up a relative's car keys, which was corroborated by his mother's statement. *Id*. at para. 15, 19. Furthermore, the night after making the video, he and his girlfriend threw the pistol away, which was also evidenced by further investigation. *Id*. at para. 18-21.

4

Thus, Mr. Hendrickson's clear denial of any subjective intent to carry out the threat, combined with other indications suggesting absence of such an intent, renders the six-level enhancement inapplicable as a matter of law and facts.

Second, it is critical to note that Mr. Hendrickson's video is hardly be deemed as a true threat in the eyes of a reasonable person, thus significantly diluting any "intent" and "likelihood" that Mr. Hendrickson would carry out the threat. USSG § 2A6.1, comment. (backg'd.) Mr. Hendrickson respectfully submits this point for this Court's thorough §3553 considerations, without implicating his guilty plea in this case.

In line with the First Amendment, § 875(c)'s threat element requires proof that a reasonable person would understand the communication to be a threat. *United States v. Wheeler*, 776 F.3d 736, 743 (10th Cir. 2015). Under the reasonable person standard, "[t]he question is whether those who hear or read the threat reasonably consider that an actual threat has been made." *United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015).

Here, Mr. Duncan O'Brien, who directly observed Mr. Hendrickson holding a gun at or near the school property, unequivocally informed that he "did not believe" Mr. Hendrickson posed a threat to the school. PSR, ECF No. 27 at para. 14. Mr. O'Brien specifically described the silly, joke-like context when Mr. Hendrickson held the gun in the car and made the video: Mr. Hendrickson drove to the school so that he could drop off his mother for an

5

errand; Mr. Hendrickson told Mr. O'Brien that he was going to film an "awesome" video, and then proceeded to make the video with his cell phone. *Id*. Simply put, there was not even a hint of threat existing in the context of the communication. It naturally follows that Mr. O'Brien, who heard the purported threat reasonably considered that no actual threat has been made and it was entirely unlikely that Mr. Hendrickson would carry out the threat. This echoes the Commission's notation that the application of §2A6.1(b)(1) focuses on "the seriousness" of the conduct, "which depends upon the defendant's intent and the *likelihood* that the defendant would carry out the threat." USSG § 2A6.1, comment. (backg'd.)(emphasis added.)

As such, without the erroneous application of the enhancement, Mr. Hendrickson's total offense level should be 13, and, with a Criminal History Category of II, his Guidelines range should be 15-21 months, significantly less than the 33-41 months suggested by the Probation as a result of this increase.

**ii. Other §3553 factors**

Mr. Hendrickson's history and characteristics favor a downward variance. Specifically, he grew up in a "rough" environment, where his father was an alcoholic while his mother was a drug addict. PSR, ECF No. 27 at para. 68. When he was five years old, his mother abandoned him. *Id*. He lived in a homeless shelter with his father for a while until his father secured a better place. *Id*. Due to lack of parental love and supervision, he sought acceptance from the wrong group of peers in his neighborhood in order to escape his

6

reality, resulting in him becoming a "troubled teen." *Id*. As his father described, Mr. Hendrickson is "an excellent man who took his joke too far." *Id*. at para. 71. Indeed, despite his very difficult childhood, Mr. Hendrickson obtained his diploma from A.R. Gould School in 2017 while detained, and maintained a constant full-time or part-time employment. *Id*. at para. 79, 82-85.

Mr. Hendrickson's need for substance abuse treatment also requires a downward variance, as he struggled not only emotionally but also mentally as a result of his poor childhood. Mr. Hendrickson participated in mental health counseling since he was about ten years old, because he suffered from dyslexia and possible neurological issues. *Id*. at para. 73. Since the age of thirteen, Mr. Hendrickson began to abuse various substances, including alcohol, marijuana, methamphetamine, and heroin. *Id*. at para. 74-76.  One important reason for Mr. Hendrickson's drug abuse was to escape his reality, particularly his pain from not having his mother in his life throughout his childhood. *Id*. at para. 78. Mr. Hendrickson completed drug abuse treatment in 2023, as evidenced by the attached Certificate. *See* Ex. A, Cert. He expressed a willingness to participate in substance abuse treatment while in custody and during his supervision. *Id*.

In light of the Probation's error in applying the six-level enhancement, these are certainly critical factors to be considered for a downward variance.

7

### iii. Supporting letters

Mr. Hendrickson respectfully submits the attached letters in support of leniency at his sentencing. *See* Ex. B, Supporting Letters.

### III. Conclusion

Based on the foregoing, Mr. Hendrickson respectfully presents the foregoing for this Court's consideration.

Date:   May 3, 2024

                                           Respectfully submitted,

***s/ Murdoch Walker II, Esq.***
Murdoch Walker, II, Esq.
Ga. Bar # 163417
mwalker@lowtherwalker.com

Lowther | Walker LLC
101 Marietta St., NW, Ste. 3650
Atlanta, GA 30303
404.496.4052
www.lowtherwalker.com

Attorney for Kyle Hendrickson

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2024, I electronically filed the foregoing SENTENCING MEMORANDUM AND MOTION FOR A DOWNWARD VARIANCE with the Clerk of the United States District Court for the District of New Hampshire by way of the CM/ECF system, which automatically will serve this document on the attorneys of record for the parties in this case by electronic mail.

Date:	May 3, 2024

        Respectfully submitted,

        ***<u>s/ Murdoch Walker II, Esq.</u>***
        Murdoch Walker, II, Esq.
        Ga. Bar # 163417
        mwalker@lowtherwalker.com

        Lowther | Walker LLC
        101 Marietta St., NW, Ste. 3650
        Atlanta, GA 30303
        404.496.4052
        www.lowtherwalker.com

        Attorney for Kyle Hendrickson