UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Case No. 23-CR-79-SE |
|  | : |  |
| v. | : |  |
|  | : |  |
| KYLE HENDRICKSON | : |  |
|  | : |  |

**GOVERNMENT'S MOTION FOR UPWARD VARIANCE
AND SENTENCING MEMORANDUM**

Defendant Kyle Hendrickson ("defendant") brought a loaded gun into a school zone and disseminated a short video clip via social media that he was going to "shoot up the school." The government respectfully requests the Court impose an upward variant sentence of 48 months imprisonment to be followed by 3 years of supervised release. Such a sentence is warranted in light of the defendant's offense conduct, the need for both specific and general deterrence, and the need for the sentence to protect the public.

**I.      INTRODUCTION**

On December 11, 2023, defendant pleaded guilty to a two-count indictment charging him with one count of interstate threatening communications in violation of 18 U.S.C. § 875(c) and one count of possession of a firearm in a school zone in violation of 18 U.S.C. § 922(q)(2)(A). The United States Probation Office determined defendant's total combined adjusted offense level to be 22 in its Presentence Report ("PSR") based on enhancements for the threat and its impacts. PSR ¶¶ 32, 33. Defendant falls in Criminal History Category II by virtue of two criminal history points. After accounting for defendant's acceptance of responsibility, he faces a Guidelines Sentencing Range of 33-41 months imprisonment, a term of supervised release of 1-3 years, and a fine of $10,000 to $100,000. Id. ¶¶ 92, 96, 102.

The government respectfully moves for an upward variant sentence of 48 months' in total, reflecting a sentence of 36 months on the threat and 12 months, consecutive, on the firearm possession charge. Pursuant to the factors set forth in 18 U.S.C. § 3553(a), the Government believes such a sentence would be sufficient but not greater than necessary given the offense conduct, the defendant's history and characteristics, the need for both specific and general deterrence, and to promote respect for the law.

## II.     BACKGROUND

On the afternoon of April 12, 2023, the FBI received information from SnapChat regarding a school shooting threat posted by an account called "khenz187." Specifically, the post was a short video of a male sitting in the driver's seat of a vehicle, holding a handgun with his right hand while apparently filming with his left hand. After panning from the handgun to another male in the front passenger seat, the video briefly zooms in on a school sign through the car window that clearly states "Portsmouth High School." The individual who is filming the video holds up the handgun and waves it at the other male. The SnapChat poster added text overlapping on the video that reads "imma shoot up the school."

Based on that information, the FBI was able to identify the defendant as the user associated with the "khenz187" SnapChat account. Portsmouth Police were able to confirm on school security video that at approximately 11:10 AM on April 12, 2023, a white SUV was parked in the area in front of the Portsmouth High School as depicted in the SnapChat video. Portsmouth Police obtained a state search warrant for the "khenz187" SnapChat account and found that at 15:06 on April 12, 2023, the above-described video with the caption "Imma shoot up the school" was sent to numerous other users.

Portsmouth Police then identified and interviewed the male passenger, "D.O.," who is seen sitting in the front passenger seat in the SnapChat video. D.O. advised that he was in the car with the defendant at Portsmouth High School when the defendant told D.O. that he was going to film an "awesome" video. D.O. said that defendant then proceeded to make the gun video with his cell phone.

On the afternoon of April 13, 2023, Hendrickson was finally located and arrested on New Hampshire state charges by Portland, Maine Police as he was sitting in the driver seat of the white SUV from which he made the video the day before. The defendant advised that he had thrown away the handgun the night of April 12. The defendant additionally volunteered that he had more guns in the rear of the SUV, as well as another gun under the mattress inside his Portland residence. After being arrested, the defendant made inculpatory statements acknowledging that he had made and shared the video from the High School.

Investigators obtained a state search warrant for the white SUV, a 2014 Ford Explorer. They recovered in the center console thirteen rounds of 40 caliber Smith & Wesson ammunition contained within a magazine and a brown wallet with a Maine driver's license for Hendrickson. On the rear passenger floor of the was a Kittery Trading Post bag with four boxes of assorted ammunition. On the rear center floor of the Ford Explorer was a Sig Romeo 7 red dot sight for a Modern Sporting Rifle a/k/a MSR platform. Also found in the rear of the Explorer were six buckshot shotgun rounds and a box of 22 caliber fire ammunition. In the back trunk area of the Ford Explorer, Portland Police found camouflage body armor; a box of fifty rounds of 40 caliber Smith & Wesson ammunition; a box of five shotgun rounds; an unloaded Chiappa Firearms shotgun, serial number SRCD-USA03220044; and an unloaded Radical 5.56 RF15 assault rifle, serial number 21-100277.

Investigators later recovered the firearm from the SnapChat video from the woods behind a hotel located in Freeport, Maine.  It was identified as a silver and black Smith & Wesson SD40VE handgun, serial number FYE6632.  The handgun was loaded with a 40 caliber S&W Blazer bullet, and had an ammunition magazine inserted in the handgun containing an additional nine rounds of the 40 caliber S&W Blazer ammunition.   Portland Police also obtained a state search warrant for the defendant's Portland residence and recovered a shotgun under the mattress in the bedroom as previously advised by the defendant.

Defendant was arrested on a federal criminal complaint April 14, 2023, and transferred to federal custody on or about April 18.  He has remained in custody since his arrest.  A grand jury indictment followed on September 13, 2023, and defendant entered a naked guilty plea on December 11.

## III.  THE APPLICABLE GUIDELINES

Under United States v. Booker, 543 U.S. 220, 245 (2005), the Sentencing Guidelines are merely advisory.  Nonetheless, at sentencing, "district courts are still required to 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'"  United States v. Millan-Isaac, 749 F.3d 57, 66 (1st Cir. 2014) (quoting Gall v. United States, 552 U.S. 38, 49 (2007)).  "[C]orrectly calculating the GSR serves an important function; it provides a 'framework or starting point' to guide the exercise of the court's discretion."  Millan-Isaac, 749 F.3d at 66 (quoting Freeman v. United States, 564 U.S. 522, 529 (2011)).

Here, the PSR calculated the Guidelines for the threatening communication in Count 1 as follows.  The violation of 18 U.S.C. § 875(c) triggers application of U.S.S.G. § 2A6.1(a)(1) and a base offense level of 12.  PSR ¶ 31.  The PSR applied a six-point enhancement for conduct "evidencing an intent to carry out such threat" under § 2A6.1(b)(1) by virtue of the defendant

4

being on campus, armed, when he filmed the threat.  Id. ¶ 32.  An additional four-point enhancement was applied for a substantial disruption of public or government services under 2A6.1(b)(4) because Portsmouth High School had to cancel school for April 13, 2023, the day after the threat was made and while defendant was still at large.  Id. ¶ 33.

The violation of 18 U.S.C. § 922(q) in Count 2 triggers application of U.S.S.G. § 2K2.5. While that violation would ordinally carry an offense level of 8, the subsection requires a cross-reference if the possession of the firearm was in connection with the commission of another offense.  Here, as the PSR notes, that cross-reference requires the application of § 2A6.1 for the violation in Count 1 and leads to the grouping of Counts 1 and 2 for calculating the applicable Guidelines Sentencing Range.  PSR ¶ 30.

The defendant falls in Criminal History Category II as the result of accumulating two criminal history points as an adult.  Id. ¶¶ 52, 54.  After accounting for defendant's acceptance of responsibility, the defendant faces a Guidelines Sentencing Range of 33-41 months imprisonment.   The government therefore respectfully requests the Court adopt the Guidelines analysis contained in the PSR.

On additional note, as referenced in 18 U.S.C. § 924(a)(4) and the application note for U.S.S.G. § 2K2.5, any sentence of imprisonment for the violation of § 922(q) must be imposed consecutively to any other sentence imposed regardless of the grouping of the offenses into a single applicable range.  See U.S.S.G. § 2K2.5 at note 3 (explaining Court can apportion its sentence between counts after determining the appropriate total punishment).

IV. **VARIANCE DISCUSSION & GOVERNMENT RECOMMENDATION**

The Guidelines Sentencing Range provided in the PSR does not sufficiently account for the particular facts and circumstances of defendant's conduct.  The government therefore moves

for an upward variance to 48 months pursuant to 18 U.S.C. § 3553(a) given the seriousness of the offense, the history and characteristics of defendant, and the need to deter the defendant and others from similar activity while promoting respect for the law.

1. **Seriousness of the Offense.**

The defendant's conduct here is extremely serious. As detailed above, he made a SnapChat video in which he handles a Smith & Wesson firearm while just steps away from the entrance to Portsmouth High School, well within the prohibited school zone.[1] A few hours later he disseminated that video via social media. School was in session on April 12, 2023, a fact that was known to the defendant as he sat in his vehicle recording. The video had immediate and widespread impact on Portsmouth High School, leading to the cancellation of classes the following day, April 13. After posting his video, defendant briefly fled overnight to Freeport, delaying any potential contact with law enforcement while the community anxiously awaited resolution. The defendant discarded the firearm from the video in the woods behind the hotel in Freeport where he stayed the night of April 12.

While defendant was not a prohibited possessor of firearms under federal law at the time of the offense, the arsenal he had accumulated prior to the threatening post bears additional mention. He had purchased a shotgun and an assault-style rifle. He had numerous boxes of ammunition, a laser sight, and body armor. Of note, those additional firearms, ammunition, and weaponry-related items are in no way accounted for in the Guidelines range despite, in the government's view, being significant aggravating evidence regarding the seriousness and nature of the threat.

---

[1] "School zone" is defined further in 18 U.S.C. § 922(q) and § 921(a)(26) as meaning both "on the grounds" of a public school or within 1,000 feet thereof.

Added all up, the defendant engaged in serious conduct that disrupted the functioning of the school while terrorizing the community at large. Such conduct warrants the imposition of a sentence that reflects the gravity of the offenses.

**2. History and Characteristics of Defendant.**

Defendant is a 26-year-old U.S. citizen and high school graduate. While this case represents his first felony conviction, his run-ins with law enforcement go back more than a decade. While none of his juvenile dispositions meet the criteria to score criminal history points under U.S.S.G. § 4A1.2(d), he does carry adult dispositions for assault in 2017 (PSR ¶ 52), resisting arrest in 2021 (id. ¶ 53), and vehicular assault in 2021 (id. ¶ 54.). He has an additional pending charge out of York County for operating under the influence of alcohol in February 2023. Id. ¶ 58.

Defendant reports a challenging upbringing, a history of substance abuse, and an intermittent work history during his adult years. To his credit, he has expressed that he is "over this lifestyle" and that he has expressed a willingness to participate in substance abuse treatment both while incarcerated and in the future. PSR ¶ 78. While defendant has denied his intent to follow through on his threat toward the high school, the PSR nonetheless paints the picture of a then 25-year-old man who was out of work, struggling with addiction, and who had accumulated numerous serious weapons in the time leading up to his SnapChat post on April 12. The Court should consider all of these factors in fashioning its sentence.

**3. Specific and General Deterrence and Promoting Respect for the Law.**

The Government addresses the separately articulated § 3553(a) factors of deterrence, promoting respect for the law, and providing a just punishment in concert. Here, a sentence of 48 months would "afford adequate deterrence to criminal conduct" both generally and

7

specifically and promote respect for the law. 18 U.S.C. § 3553(a)(2)(B). The issue of general deterrence is a particularly important factor in cases of this nature where the Court can send a message that deters others from issuing similar such threats.

The need for the sentence to provide specific deterrence to this particular defendant for this conduct also weighs in favor of the 48 month term of incarceration. While the defendant has accepted responsibility by pleading guilty, his initial reaction was to flee, discard the weapon from the video, and evade consequences. A sentence of imprisonment of 48 months would adequately deter the defendant from future criminal conduct while promoting respect for the law. Defendant is still a young man, but his adult life is now at a cross-road. While this is his first felony conviction, he has a lengthy record of run-ins with law enforcement that does not evince a respect for the law. A significant sentence of 48 months would send a strong message that this is defendant's best—and perhaps last meaningful—chance to live a productive and law-abiding life.

**4. The Need to Protect the Public from Defendant.**

Finally, the government views a sentence of 48 months as necessary to "protect the public from further crimes of the defendant." The defendant's threat to shoot-up the Portsmouth High School did damage to the entire community at large. Students, teachers, and administrators all had to return to school after the defendant's threat. Offering the community some additional piece of mind that the defendant's incarceration will protect the public, and particularly the school community, is a fair additional consideration for the Court to weigh in fashioning its sentence.

## VI.     CONCLUSION

For the reasons stated above, the Government respectfully requests the Court impose an upward variance and impose a sentence of 48 months' imprisonment followed by a term of 3 years' supervised release. Such a sentence is reasonable, appropriate and not greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

JANE E. YOUNG
United States Attorney

Dated: May 6, 2024

By: /s/ Charles L. Rombeau
Charles L. Rombeau
NY Bar No. 4326500
Assistant United States Attorney
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552